1   KEVIN RYAN (CSBN 118321)
    United States Attorney
2
    EUMI L. CHOI (WVABN 0722)
3   Chief, Criminal Division

4   J. DOUGLAS WILSON (PABN 44915)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102
        Telephone: (415) 436-6778
7       FAX: (415) 436-7234

8   Attorneys for Platintiff

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11
    UNITED STATES OF AMERICA,          )    No.    CR 05-0324 MMC
12                                      )
            Plaintiff,                  )    GOVERNMENT'S RESPONSE IN
13                                      )    OPPOSITION TO DEFENDANT
        v.                              )    LESTER W. HOGAN'S MOTION
14                                      )    TO SUPPRESS EVIDENCE
    RAYMON HILL, DENNIS CYRUS,          )
15  JR., AQUIL H. PETERSON, LESTER      )
    W. HOGAN, STEVEN WILSON,            )
16  DONALD ARMOUR, AND MISTER           )
    MEILLEUR,                           )
17                                      )
            Defendants.                 )
18  _____)

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION
TO SUPPRESS (CR 05-0324 MMC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Officer Schlegle's Initial Inquiry Concerning Defendant's Residence
            Neither Implicated Nor Violated The Fourth Amendment. . . . . . . 4

      B.    When Defendant Abruptly and Aggressively Reached Under His
            Bulky Jacket Into The Area Of His Waistband And Pants Pockets,
            There Was Reasonable Suspicion To Justify A Terry Stop and Frisk
            For Officer Safety Reasons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    A Terry Stop Was Justified. . . . . . . . . . . . . . . . . . . . . . . . . 5

            2.    A Terry Frisk Was Likewise Justified. . . . . . . . . . . . . . . . 6

            3.    The Use of Handcuffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    Defendant's Struggle with Officer Schlegle Provided Probable Cause
            to Arrest Defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      D.    The Search of Defendant's Person Subsequent to the Lawful Arrest
            Was Justified as Both a Search Incident to a Lawful Arrest and a
            Parole Search. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            1.    The Search Was Justified as a Search Incident to a Lawful
                  Arrest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.    The Search Was Justified as a Parole Search. . . . . . . . . . . 10

      D.    Defendant's Motion Should be Denied Without An Evidentiary
            Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1

2          **TABLE OF AUTHORITIES**

3           **FEDERAL CASES**

4   *Adams v. Williams*, 407 U.S. 143 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5   *Florida v. Bostick*, 501 U.S. 429 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6   *Florida V. Royer*, 460 U.S. 491 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7   *INS v. Delgado*, 466 U.S. 210 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8   *Illinois v. Wardlow*, 528 U.S. 119 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

9   *Moreno v. Baca*, 400 F.3d 1152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10  *New York v. Belton*, 453 U.S. 454 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11  *Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8

12  *United States v. Arvizu,* 534 U.S. 266, 273 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13  *United States v. Ayarza*, 874 F.2d 647 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

14  *United States v. Bautista*, 684 F.2d 1286 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . 8

15  *United States v. Christian*, 356 F.3d 1103 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 4

16  *United States v. Erwin*, 803 F.2d 1505 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

17  *United States v. Hernandez*, 313  F.3d 1206 (9th Cir. 2002)3 . . . . . . . . . . . . . . . . . . . . . . . 7

18  *United States v. Kim*, 25 F.3d 1426 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19  *United States v. Malone*, 886 F.2d 1162 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

20  *United States v. Mendenhall*, 446 U.S. 544 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21  *United States v. Patterson*, 648 F.2d 625 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22  *United States v. Robinson*, 414 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

23  *United States v. Sokolow*, 490 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

24  *United States v. Thomas*, 863 F.2d 622 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

25  *United States v. Thompson*, 597 F.2d 187 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . 8

26  *United States v. Ullrich*, 580 F.2d 765 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

27  *United States v. Wardlow*, 951 F.2d 1115 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 11

28

1

**STATE CASES**

2  *People v. Benjamin*, 51 N.Y.2d 267 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3  *People v. Gregory S.*, 112 Cal. App. 3d 764 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4  *People v. Lloyd*, 216 Cal. App. 3d 1425 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5  *People v. Rodriguez*, 177 A.D.2d 521 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6  **FEDERAL STATUTES**

7  Northern District of California Local Criminal Rule 47-2(b). . . . . . . . . . . . . . . . . . . . . . . . . . 10

8  Northern District of California Local Civil Rule 7.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9  **STATE STATUTES**

10  Cal. Pen. Code § 148(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   KEVIN V. RYAN (CSBN 118321)
    United States Attorney
2
    EUMI L. CHOI (WVBN 0722)
3   Chief, Criminal Division

4   PHILIP J. KEARNEY (CSBN 114978)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102
        Telephone: (415) 436-6758
7
    Attorneys for Plaintiff
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12  UNITED STATES OF AMERICA,          )    No.  CR 05-0324 MMC
                                       )
13              Plaintiff,             )    GOVERNMENT'S RESPONSE IN
                                       )    OPPOSITION TO DEFENDANT
14         v.                          )    LESTER W. HOGAN'S MOTION TO
                                       )    SUPPRESS EVIDENCE
15  RAYMON HILL, DENNIS CYRUS,         )
    JR., AQUIL H. PETERSON, LESTER     )
16  W. HOGAN, STEVEN WILSON,           )    Hearing Date: December 7, 2005
    DONALD ARMOUR, AND MISTER          )    Hearing Time: 2:30 p.m.
17  MEILLEUR,                          )
                                       )
18              Defendants.            )
                                       )
19

20

21         Plaintiff United States of America, by and through its counsel of record, the

22  United States Attorney for the Northern District of California, hereby opposes

23  defendant Lester W. Hogan's Motion to Suppress.  This opposition is based on the

24  attached Memorandum of Points and Authorities, the Declarations of Officers

25  ///

26  ///

27

28

1   Peter Schlegle and Kirk Edison, attached hereto as Exhibits A and B respectively,

2   the files and records in this case, and any further evidence or argument as may be

3   presented at the hearing on the motion.

4

5   DATED: November 23, 2005                KEVIN V. RYAN
                                            United States Attorney
6   _____

7   _____    EUMI L. CHOI
                                            Chief, Criminal Division
8

9   _____
                                                 /s/
10  _____    PHILIP J. KEARNEY
                                            Assistant United States Attorney
11  _____    Attorneys for Plaintiff
                                            United States of America
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION
TO SUPPRESS (CR 05-0324 MMC)          -2-

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3
## I.

4
## INTRODUCTION

5       On May 24, 2005, the grand jury returned an indictment charging defendant

6 Lester W. Hogan (hereinafter "defendant") and seven others with various crimes

7 including, inter alia, Conspiracy to Possess with Intent to Distribute and to

8 Distribute 50 grams or more of Cocaine Base, in violation of Title 21, United

9 States Code, Section 846. Among the overt acts defendant is charged with

10 committing in furtherance of the conspiracy is possession with intent to sell

11 cocaine base on January 4, 2001.

12       Defendant now claims that the cocaine seized on that date should be

13 suppressed because "his arrest and subsequent search of his person violated the

14 Fourth Amendment." (Def. Mtn. at 2). Defendant's argument is without merit.

15 The initial stop of defendant was lawful as was the subsequent frisk and arrest.

16 The seizure of the cocaine was a result of a search incident to a lawful arrest for

17 resisting and obstructing a police officer. Moreover, the officers had authority to

18 conduct a parole search on defendant. Because there is no basis for suppressing

19 any of the evidence obtained subsequent to the lawful arrest, defendant's motion

20 should be denied.

21

22
## II.

23
## FACTUAL BACKGROUND

24       On January 4, 2001, at approximately 11:35 a.m., San Francisco Police

25 Officers Peter Schlegle and Timothy Tang of the gang task force were in uniform

26 in a marked patrol car driving southbound on Webster when they observed two

27 males standing on the corner of Webster Street and Rose Alley. (Schlegle Decl. at

28 ¶ 2.) This corner was known to Officer Schlegle as a high-crime area known for

1   narcotics trafficking and gang-related activity.  (Schlegle Decl. at ¶ 2).  As the

2   officers drove past the two men, one of the men, later identified as defendant

3   Lester W. Hogan, turned, saw the officers, and began to walk away from the

4   officers down Rose Alley towards Buchanan Street.  (Schlegle Decl. at ¶ 2.)

5        The officers made a U-turn and drove toward defendant.  (Schlegle Decl. at

6   ¶ 2.)  Defendant then entered a gated entrance for the Hayes Valley South Public

7   Housing Project (also known as, and hereinafter referred to as, the "Page Street

8   Projects").  (Id.)  Officer Schlegle knew that the Page Street Projects were private

9   property and that anyone entering had to be a resident.   (Id.)  He was also aware

10  that trespassing was a problem at the Page Street Projects.  (Id.)

11       Officer Schlegle stopped the patrol car, and he and Officer Tang approached

12  defendant on foot without drawing their guns, to get defendant's identification in

13  order to ascertain whether defendant lived in the projects.  (Schlegle Decl. at ¶ 3)

14  When Officer Schlegle asked defendant if he lived there, defendant did not

15  answer.  (Id.)  Instead, defendant abruptly turned away from the officers and, in a

16  quick and aggressive manner, placed both of his hands under his bulky jacket into

17  the area of his waistband and pants pockets.  (Id.)  Based on his training and

18  experience Officer Schlegle knew that weapons are often kept in waistbands and

19  pants pockets.  (Id.).  Concerned for his safety, Officer Schlegle grabbed

20  defendant's right arm and began to handcuff him in order to conduct a cursory

21  frisk for weapons and identification.  (Id.)

22       With only his right wrist handcuffed, defendant turned and attempted to

23  break away.  (Id.)  A struggle then ensued during which Officer Schlegle forced

24  defendant to the ground and Officers Tang and Schlegle handcuffed defendant.

25  (Id.)  Officer Schlegle again asked defendant for his name and identification.  (Id.)

26  Instead of responding, defendant swore at the two officers.  (Id.)  Officer Schlegle

27  then conducted a cursory pat-down for weapons and for a wallet or identification,

28  but found nothing.  (Id.)

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION
TO SUPPRESS (CR 05-0324 MMC)        -2-

1     Officers Tang and Schlegle then transported defendant a few blocks to

2 Northern Police Station under arrest for resisting/obstructing a police officer in

3 violation of California Penal Code § 148, and for further investigation to

4 determine defendant's identity. (Schlegle Decl. at ¶ 4.)  Upon their arrival at the

5 police station, Sergeant Steven Bosshard recognized defendant and informed

6 Officers Tang and Schlegle that their suspect was Lester W. Hogan. (Id.)

7 Sergeant Bosshard also knew that defendant was on active parole with the

8 California Department of Corrections so he contacted the parole agent who

9 verified that defendant was on parole, and the Sergeant so informed the officers.

10 (Id.)

11     Officer Schlegle then asked Officer Kirk Edison to assist in searching

12 defendant because defendant had been combative. (Schlegle Decl. at ¶ 5; Edison

13 Decl. at ¶ 2.)  As they began the search, defendant was again not cooperative and

14 then, without instruction from the officers, defendant suddenly and rapidly reached

15 into the rear of his pants. (Schlegle Decl. at ¶ 5; Edison Decl. at ¶ 2.)  One of the

16 officers then grabbed defendant's arm and a struggle again ensued. ( Id.)  Once

17 the officers gained control of defendant, they placed him in handcuffs and

18 continued the search. ( Id.)  Officer Edison recovered a plastic baggie containing a

19 large quantity of an off-white colored substance, ultimately determined to be 5.24

20 grams of cocaine base, that was stuck between defendant's buttocks. (Edison

21 Decl. at ¶ 2.)  Sergeant Bosshard recovered powdered cocaine from defendant's

22 right pants pockets. (Schlegle Decl. At ¶ 6.)

23     After the officers discovered the narcotics, defendant threatened the officers

24 by saying that he (defendant) would get the officers "back on the street," and that

25 he would "see" the officers "when I get out motherfucker." (Schlegle Decl. At ¶

26 7.)  Defendant also challenged the officers to fight. (Id.)

27 ///

28 ///

III.

ARGUMENT

**A.   Officer Schlegle's Initial Inquiry Concerning Defendant's Residence Neither Implicated Nor Violated The Fourth Amendment.**

A police officer may approach an individual on the street and ask questions, including requesting identification, without violating or even implicating the Fourth Amendment.  See Florida v. Bostick, 501 U.S. 429, 434 (1991) ("[M]ere police questioning does not constitute a seizure.");  United States v. Erwin, 803 F.2d 1505, 1508 (9th Cir. 1986) (quoting Florida V. Royer, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street ....by asking him if he is willing to answer some questions.").  The Ninth Circuit has likewise held that "[a] law enforcement officer may stop and question any person, for any reason, as long as that person 'remains free to disregard the questions and walk away.'" United States v. Malone, 886 F.2d 1162, 1164 (9th Cir. 1989), quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980); also citing United States v. Ayarza, 874 F.2d 647, 650 (9th Cir. 1989); see also INS v. Delgado, 466 U.S. 210, 216 (1984) (holding that INS inspectors could, without reasonable suspicion, enter a workplace, ask to examine a person's identification, and ask questions); United States v. Christian, 356 F.3d 1103, 1106 (9th Cir. 2004) (holding that "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure"); United States v. Kim, 25 F.3d 1426, 1430 (9th Cir. 1994)(officers do not implicate the Fourth Amendment by such inquiries.)

When the police officers approached the defendant within the Page Street Projects, they did not display any force or attempt to detain defendant.  (Schlegle Decl. ¶ 3.)  Rather, the officers initiated a consensual encounter to determine if defendant lived in, and was therefore lawfully present at, the Page Street Projects.

(<u>Id.</u>)  The officers did not have their guns drawn nor indicated in any way that defendant was not free to leave.  (<u>Id.</u>)  Because defendant was not seized at the point of the initial contact when the officer asked if defendant lived in the Page Street Projects, the Fourth Amendment was neither implicated nor violated.

**B.    When Defendant Abruptly and Aggressively Reached Under His Bulky Jacket Into The Area Of His Waistband And Pants Pockets, There Was Reasonable Suspicion To Justify A Terry Stop and Frisk For Officer Safety Reasons.**

**1.    <u>A Terry Stop Was Justified</u>.**

A lawful stop must be based on a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989); quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968).  The totality of the circumstances must be considered when determining whether the officer had the requisite reasonable suspicion.  <u>Sokolow</u>, at 8-10 (holding reasonable suspicion depends on the "totality of the circumstances – the whole picture" and that several innocent facts may, when considered together, add up to reasonable suspicion). When the totality of the circumstances in this case are reviewed, the officers had reasonable suspicion to be concerned for their safety and to justify a brief detention of defendant after he abruptly reached into the area of his waistband and pockets.

First, defendant was first seen standing in a high-crime location known for drug trafficking and gang-related activity. (Schlegle Decl. at ¶ 2.)  The Supreme Court in <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (2000) recognized that a suspect's presence in a high- crime area is one factor that could be used to justify an investigatory stop.  <u>Id.</u> at 124. ("[W]e have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a <u>Terry</u> analysis.")

Second, when defendant saw the officers in their patrol car, he immediately left the street corner at which he had been standing and walked away from the

officers into the Page Street Projects, private property open only to residents where the officers knew that trespassing had been a problem.  (Schlegle Decl. ¶ 2.) Such evasive action provided an additional fact giving rise to a reasonable suspicion of criminal activity, as the Supreme Court has consistently "recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Wardlow, at 124. (finding reasonable suspicion where "it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police.")

Third, defendant not only would not respond to the officer's inquiry as to whether he lived in the Page Street Projects, but he also abruptly and aggressively placed his hands under his bulky jacket into the waistband area of his pants. (Id.) Given the potential danger that might result from such an abrupt movement, possibly to a weapon, and given the officers' proximity to the defendant (the officers were within arms' reach), Officer Schlegle was clearly justified in briefly detaining defendant as he reached for his waistband area.[1]  (Schlegle Decl. at ¶ 3.)

Based on these factors, the officers had reasonable suspicion to briefly detain defendant based on the concern that he may be armed.

## 2. A Terry Frisk Was Likewise Justified.

"A lawful frisk does not always flow from a justified stop." United States v. Thomas, 863 F.2d 622, 628 (9th Cir. 1988).  In deciding whether an officer acted reasonably in conducting a frisk of a person pursuant to a stop, courts look to "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry at 27.  ("[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual...").  Courts will further look to

[1] See People v. Rodriguez, 177 A.D.2d 521, 523 (N.Y.A.D. 2 Dept. 1991)(Finding officer was justified in taking reasonable precautionary measure of restraining defendant's arms in order to ensure his safety when defendant suddenly reached towards his waistband.)

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO SUPPRESS (CR 05-0324 MMC)        -6-

the specific reasonable inferences which the officer is entitled to draw from the facts in light of his experience.  Id.   Furtive or abrupt movements by suspects are appropriate factors to justify a concern for officer safety and a subsequent frisk. See Thomas at 629-30; citing United States v. Ullrich, 580 F.2d 765, 769 (5th Cir. 1978) (emphasizing the importance of police officers being able to take reasonable steps to ensure their safety.).

Officer Schlegle acted reasonably in his concern for his safety.  Defendant was in a high-crime neighborhood known for gang-related activity, and he immediately walked away once he saw the police officers.  (Schlegle Decl. at ¶ 2.) Defendant was wearing bulky clothing which could easily conceal firearms.  (Id.) Most importantly, defendant abruptly and aggressively placed his hands under his bulky jacket into his waistband and pants pocket area, as if to reach for a firearm or other weapon.  (Id.)  Officer Schlegle thereafter acted reasonably to protect his and Officer Tang's safety by conducting a Terry frisk of defendant to determine if defendant was reaching for a weapon.

While defendant in his motion mentions these various factors, his conclusion that there was insufficient grounds for reasonable suspicion focuses on a single fact - defendant's refusal to respond to the officer's verbal requests - and disregards the other factors.  (Def. Mtn. at 5.)  The proper inquiry is whether all of the factors cited above, considered together, reasonably justified an investigation beyond the initial encounter and inquiry.  See United States v. Hernandez, 313 F.3d 1206, 1210 (9th Cir. 2002) (explaining that a reviewing court "may not consider each factor in isolation," but "must look at the totality of the circumstances") (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002). Here, the totality of the circumstances establish reasonable suspicion to justify a brief detention and frisk of defendant.

///

///

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION
TO SUPPRESS (CR 05-0324 MMC)          -7-

### 3.  __The Use of Handcuffs__

The fact that Officer Schlegle handcuffed defendant's right hand prior to the frisk did not transform the <u>Terry</u> stop and frisk into an arrest.  Indeed the Ninth Circuit has not only repeatedly rejected the argument that handcuffing automatically turns a stop into an arrest, <u>United States v. Bautista</u>, 684 F.2d 1286, 1289 (9th Cir. 1982); citing <u>United States v. Patterson</u>, 648 F.2d 625, 632-34 (9th Cir. 1981), but they have also specifically approved of the use of handcuffs. <u>United States v. Thompson</u>, 597 F.2d 187 (9th Cir. 1979)(handcuffs reasonably necessary where suspect repeatedly attempted to reach his inside coat pocket). Indeed, in some situations handcuffing is necessary as "[t]he purpose of a <u>Terry</u> frisk is to 'allow the officer to pursue his investigation without fear of violence.'" <u>Bautista</u>, at 1289, quoting <u>Adams v. Williams</u>, 407 U.S. 143, 146 (1972).  The <u>Bautista</u> court also cited to language in <u>Terry</u> in which the Supreme Court detailed the societal policy behind allowing the police certain leeway during their investigations, language that applies equally to this case:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.  Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.  American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded.

<u>Terry</u>, 392 U.S. at 23.

The initial handcuffing of defendant prior to the struggle was reasonably necessary and not unduly intrusive.  Officer Schlegle had reasonable suspicion to believe that defendant might be reaching for a weapon as defendant had abruptly reached under his bulky coat into the area of his waistband and pants pockets, a location often used to carry and hide weapons.  (Schlegle Decl. ¶ 3.)  Therefore the stop and frisk was reasonable as was the use of handcuffs.  "It would, indeed, be

absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety." <u>People v. Benjamin</u>, 51 N.Y.2d 267, 271 (1980).

## C.   Defendant's Struggle with Officer Schlegle Provided Probable Cause to Arrest Defendant.

Probable cause to arrest under California law exists when a suspect does not comply with the demands of an officer following a lawful detention.  <u>People v. Lloyd</u>, 216 Cal. App.3d 1425, 1429 ("following a lawful detention, walking away from an officer rather than complying with demand for identification provides probable cause to arrest for resisting arrest").  California Penal Code ("CPC") Section 148(a)(1) makes it a crime to resist or obstruct a police officer.  In its relevant section, it provides that:

> Every person who willfully resists, delays, or obstructs any public officer, peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, . . . shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Therefore, when defendant attempted to break away from the officer's grip, resisted the officers, and then struggled with the officers (Schlegle Decl. ¶ 3), he had violated CPC § 148 (a)(1).  <u>See</u>  <u>People v. Gregory S.</u>, 112 Cal. App.3d 764, 777-78 (1980) (walking away and then struggling with police officer when officer sought to restrain defendant constituted a violation of CPC § 148).

## D.   The Search of Defendant's Person Subsequent to the Lawful Arrest Was Justified as Both a Search Incident to a Lawful Arrest and a Parole Search.

### 1.   The Search Was Justified as a Search Incident to a Lawful Arrest.

Warrantless searches are valid when the search is conducted incident to a lawful custodial arrest.  <u>See</u> <u>New York v. Belton</u>, 453 U.S. 454, 461 (1981); <u>United States v. Robinson</u>, 414 U.S. 218, 235 (1973) (a search incident to a lawful

custodial arrest "is not only an exception to the warrant requirement of the [4th]

Amendment, but is also a 'reasonable' search under that [a]mendment.")

Defendant was lawfully under arrest for violating CPC § 148(a)(1) when he

was taken to the police station.  Therefore, any subsequent search was incident to a

lawful arrest and did not violate the Fourth Amendment.

## 2.    The Search Was Justified as a Parole Search.

Because the search that resulted in the seizure of the cocaine was a search

incident to a lawful arrest, this court need not even reach the issue of the validity

of the parole search.  However, if the court chooses to address it, then defendant's

status as a parolee with the California Department of Corrections justified a parole

search at the police station.  The Ninth Circuit has held that a law enforcement

officer must have "a reasonable suspicion that a parolee has engaged in criminal

wrongdoing or violated his parole prior to arresting him or conducting a search of

his person." Moreno v. Baca, 400 F.3d 1152, at 1163.  Contrary to defendant's

assertion in his motion (Def. Mtn. at 5-6), here there was a clear "particularized

and objective basis" for such reasonable suspicion as defendant was in the police

station under arrest for a violation of CPC § 148(a)(1) and also under investigation

for trespassing.  Defendant had entered a resident-only housing project and had

refused to identify himself.  Officer Schlegle therefore suspected defendant of

trespassing into the Page Street Projects in addition to his violation of CPC § 148.

(Schlegle Decl. ¶ 2.)

## D.    Defendant's Motion Should be Denied Without An Evidentiary Hearing.

Defendant has failed to file a declaration with his motion to suppress.  The

motion is based solely on allegations based on references to police reports.

However, Northern District of California Local Criminal Rule 47-2(b) requires

that:

> Motions presenting issues of fact shall be supported by affidavits or declarations which shall comply with the requirements of Civil L.R. 7-5.

Civil L.R. 7.5(a) in turn requires a declaration from a moving party in support of a motion:

> (a) Affidavit or Declaration Required. Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. Extracts from depositions, interrogatory answers, requests for admission and other evidentiary matters must be appropriately authenticated by an affidavit or declaration.

Defendant asks for a hearing in his motion "to resolve any disputes of fact regarding the circumstances of the search." (Def. Mtn. at 2). However, there are no disputes of fact as defendant has neither alleged any facts nor contradicted anything contained in the police reports via an affidavit or declaration. Because defendant failed to include a declaration from anyone, including himself, this court should decide the motion on the papers without an evidentiary hearing. See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991) (defendant forfeited right to a hearing by failing to file a declaration as required by the local rules).

## IV.

## CONCLUSION

For the reasons stated above, defendant's motion to suppress should be denied without a hearing.

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION
TO SUPPRESS (CR 05-0324 MMC)        -11-